## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INNOVATIVE FOOD HOLDINGS, INC.; INNOVATIVE GOURMET LLC d/b/a IGOURMET; FOOD INNOVATIONS, INC.; and EVAN J. GRIFFITHS | No. 2:21-cv-1092 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| HANOVER INSURANCE COMPANY and ALLMERICA FINANCIAL BENEFIT INSURANCE COMPANY | |
| Defendants. | |

## COMPLAINT

Plaintiffs Innovative Food Holdings, Inc. ("IVFH"), Innovative Gourmet LLC d/b/a iGourmet ("Innovative Gourmet"), Food Innovations, Inc. ("Food Innovations"), and Evan J. Griffiths (collectively, the "Policyholders"), by their undersigned counsel, Reed Smith LLP, hereby submit their Complaint against Defendants Hanover Insurance Company and Allmerica Financial Benefit Insurance Company, related entities within the Hanover Insurance Group of insurance companies (collectively, the "Hanover Insurance Companies"), and in support thereof, aver as follows:

### NATURE OF THE ACTION

1.      This is an action for a declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing and bad faith conduct under 42 Pa. Cons. Stat. Ann. § 8371, arising out of the Hanover Insurance Companies' failure and refusal to provide insurance coverage to the Policyholders under insurance policies the Hanover Insurance Companies sold to them (the "Hanover Policies"). These claims arise out of the Hanover Insurance Companies': a) wrongful

denials of coverage; b) refusals to pay policy benefits where the obligation to do so is clear; and c) failure to protect the Policyholders' interests while consistently ignoring their contractual obligations and protecting their own self-interest over that of their Policyholders.

2.       This case arises out of a serious automobile accident that occurred on the Pennsylvania Turnpike involving a truck driven by Mr. Griffiths, which resulted in bodily injury to multiple persons and the death of a child.  The Underlying Litigation, as defined below, consists of two consolidated cases that were filed against the Policyholders and others sounding in negligence in connection with the accident, for which the Hanover Insurance Companies are refusing to defend and fully indemnify the Policyholders, despite the plain language of the Hanover Policies that provides coverage for these claims.

3.       Although the Hanover Insurance Companies purport to recognize coverage for bodily injury and property damage alleged in the Underlying Litigation for two of the Policyholders, IVFH and Food Innovations, they denied coverage and refused to defend Innovative Gourmet and Mr. Griffiths.  In doing so, the Hanover Insurance Companies ignore (1) the clear terms of the Hanover Policies identifying Innovative Gourmet and Mr. Griffiths as "insureds" to the extent it may be liable for the conduct of the named insureds, including IVFH and Food Innovations; (2) allegations in the Underlying Litigation that Innovative Gourmet is or may be liable for the conduct of IVFH, Food Innovations or Mr. Griffiths; and (3) an undisputed oral indemnification agreement among Innovative Gourmet, Food Innovations and IVFH that requires the Hanover Insurance Companies' full defense and indemnification of Innovative Gourmet for the protection of IVFH and Food Innovations.

4.       As set forth in detail below, the Hanover Insurance Companies have breached their policies by, among other things, failing to provide a complete defense and protection for all of the

Policyholders despite acknowledging the existence of coverage for IVFH and Food Innovations, without a reasonable basis, refusing to correspond with the Policyholders in a timely manner, and continuing a pattern of ongoing bad faith conduct toward the Policyholders.

## PARTIES

5.      Plaintiff IVFH is a corporation duly organized and existing under and by virtue of the laws of the State of Florida, with its principal place of business located at 28411 Racetrack Road, Bonita Springs, Florida 34135.

6.      Plaintiff Innovative Gourmet is a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 508 Delaware Avenue, West Pittston, Pennsylvania 18643.  Innovative Gourmet, LLC d/b/a iGourmet was sued as both Innovative Gourmet, LLC and, improperly as, iGourmet LLC d/b/a iGourmet.com in the Underlying Litigation.  Innovative Gourmet is a wholly-owned subsidiary of IVFH and its sole member is IVFH.

7.      Plaintiff Food Innovations is a corporation duly organized and existing under and by virtue of the laws of the State of Florida, with its principal place of business located at 28411 Racetrack Road, Bonita Springs, Florida 34135.  Food Innovations is a wholly-owned subsidiary of IVFH.

8.      Plaintiff Evan J. Griffiths is an individual domiciled in Luzerne County, Pennsylvania with a current address of 15 Market Street, Pittston, Pennsylvania 18643.  He is a former employee of Innovative Gourmet.

9.      Defendant Allmerica Financial Benefit Insurance Company is a Michigan corporation, with its principal place of business at 440 Lincoln Street, Worcester, MA 01653.

10.     Upon information and belief, Defendant Allmerica Financial Benefit Insurance Company has been licensed to conduct the business of insurance in the Commonwealth of Pennsylvania, and it has conducted and continues to conduct business throughout the Commonwealth of Pennsylvania.

11.     Defendant Hanover Insurance Company is a New Hampshire corporation, with its principal place of business at 440 Lincoln Street, Worcester, MA 01653.

12.     Upon information and belief, Defendant Hanover Insurance Company has been licensed to conduct the business of insurance in the Commonwealth of Pennsylvania, and it has conducted and continues to conduct business throughout the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     This Court has personal jurisdiction over the Hanover Insurance Companies by virtue of their business activities within the Commonwealth, including the sale of insurance policies in the Commonwealth and their handling of claims made against the Policyholders for loss that occurred within the Commonwealth.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that a substantial portion of the events giving rise to the claim occurred in this District.

## THE HANOVER POLICIES

16.     Allmerica Financial Benefits Insurance Company sold Business Auto Policy No. AWJ-D070429-03 (the "Auto Policy") and Hanover Insurance Company sold Commercial Follow Form Excess and Umbrella Policy No. UHJ-A93608703 (the "Excess Policy") to the Policyholders

for the policy period of June 1, 2019 to June 1, 2020.  True and correct copies of the Auto Policy

and Excess Policy are attached hereto as Exhibit A and Exhibit B, respectively.

## The Auto Policy

17.     The insuring agreement of the Auto Policy provides both an unlimited duty to

defend the Policyholders outside of the indemnity limits of the Auto Policy and a broad agreement

to indemnify them in lawsuits including the Underlying Litigation:

> We will pay all sums an "insured" legally must pay as damages because of
> "bodily injury" or "property damage" to which this insurance applies,
> caused by an "accident" and resulting from the ownership, maintenance or
> use of a covered "auto." . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking
> for such damages . . . .

Ex. B., Section II – Liability Coverage.

18.     The Auto Policy states

> Under this Coverage Form, we cover "accidents" and "losses" occurring:
> a.   During the policy period shown in the Declarations; and
> b.   Within the coverage territory.
> The coverage territory is:
> a.   The United States of America . . . .

*Id.*, Section IV – Business Auto Conditions.

19.     The Auto Policy defines "Accident" to include "continuous or repeated exposure

to the same conditions resulting in 'bodily injury' or 'property damage.'"  *Id.*, Section V –

Definitions.

20.     The Auto Policy defines "Auto" as "1. A land motor vehicle, 'trailer' or semitrailer

designed for travel on public roads . . ."  *Id.*

21.     The Auto Policy defines "Bodily injury" as "bodily injury, sickness or disease

sustained by a person including death resulting from any of these."  *Id.*

22.     The Auto Policy defines "Property damage" as "damage to or loss of use of tangible property."  *Id.*

23.     The Auto Policy defines "Insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage."  *Id.*

24.     The Auto Policy defines "Suit" as "a civil proceeding in which [ ] Damages because of 'bodily injury' or 'property damage' . . . to which this insurance applies, are alleged."

25.     The section titled, "Who Is An Insured," in the Auto Policy states

> 1.  The following are "insureds":
>     a.  You for any covered "auto". . . .
>     b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .
>     c.  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.*, Section II – Liability Coverage.

26.     The Auto Policy provides that the word "you" refers to the Named Insured shown in the Declarations, and the Auto Policy Declarations identifies Innovative Food Holdings, Inc. as the Named Insured.  *Id.*, Business Auto Coverage Form and Declarations.

27.     The Auto Policy states "this Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract.'"  *Id.*, Section IV – Business Auto Conditions.

28.     The Auto Policy defines "Insured Contract" as

> . . . 5. That part of any other contract or agreement  pertaining  to your business . . . under  which  you assume the tort liability  of another to pay  for "bodily  injury" or "property  damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or  agreement.

*Id.*, Section V – Definitions.

29.     Section II B. of the Auto Policy, titled "Exclusions," provides:

> This insurance does not apply to any of the  following:
> 1.  Contractual Liability assumed under any contract or agreement.

But this *exclusion* does *not* apply to liability for damages:

    a.  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    b.  That the "insured" would have in the absence of the contract or agreement.

*Id.*

30.    The limit of liability for the Auto Policy is "$1,000,000 Combined Single Limit" for "Optional Bodily Injury."  *Id.*, Renewal Declarations.

31.    The Auto Policy is scheduled to provide coverage for "Optional Bodily Injury" for "Autos" including "specifically Described 'Autos,'" "Hired 'Autos' Only," and "Nonowned 'Autos' Only." This broad coverage protects both "'autos' you lease, hire, rent or borrow" and "'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business." *Id.*, Schedule of Coverage and Covered Autos.

### The Excess Policy

32.    The Excess Policy, for the policy period of June 1, 2019 to June 1, 2020, is a renewal of Policy No. UHJ A936087 02, for the policy period of June 1, 2018 to June 1, 2019. *See* Ex. B, Declarations.  A true and correct copy of Policy No. UHJ A936087 02 is attached hereto as Exhibit C.

33.    The Insuring Agreement of the Excess Policy provides that coverage follows the terms of the Auto Policy, including the broad duty to defend and indemnify the Policyholders, stating:

    a.  We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated to pay as damages, provided:

        (1) Such damages are covered by "underlying insurance";

        (2) The event which triggers coverage on the "underlying

> insurance" takes place during the policy period of this insurance, and
>
> (3) The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages also covered under this policy . . . .

Ex. C, Section I, Coverage A.

34.     The Excess Policy states Hanover Insurance Company has "the right and duty to defend the insured against any 'suit' seeking damages to which this insurance applies.  If the 'underlying insurer' defends a 'suit' even if such 'suit' is groundless, false or fraudulent, we will also defend such a 'suit.'"  *Id.*, Section II – Defense and Settlement.

35.     The Excess Policy defines "Suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies re alleged."  *Id.*, Section IX – Definitions.

36.     Section III, titled "Who Is An Insured," of the Excess Policy clarifies that all people and organizations that qualify as insureds under the Auto Policy also qualify as insureds under the Excess Policy, stating:

> The following persons or organizations qualify as an insured:
> a.  The named insured stated in Item 1 of the Declarations; and
> b.  Any other person or organization qualifying as an insured under the "underlying insurance" but not beyond the extent of any limitation imposed under any contract or agreement.

*Id.*

37.     The Declarations page of the Excess Policy identifies IVFH as the "Named Insured" and includes a $10,000,000 limit of liability for each occurrence or each claim.  *Id.*

38.     The Excess Policy defines "underlying insurance" as:

liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance for the limits and policy periods indicated. It includes any policies issued to replace those policies during the term of this insurance that provide:

    a.  At least the same limits of liability or limits of insurance; and

    b.  The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

*Id.*, Section IX – Definitions.

39.    The Schedule of Underlying Polices in the Excess Policy lists the Auto Policy with an applicable limit of $1,000,000 for bodily injury per accident. *See* Ex. B.

40.    The Excess Policy also lists "Food Innovations Inc." as a Named Insured. *Id.*, Multiple Named Insured Endorsement.

## THE UNDERLYING LITIGATION

41.    On September 16, 2019, Chiho Park and certain other plaintiffs, filed a complaint in the case captioned as *Park et al. v. Griffiths et al.*, Case ID 190902001, in the Philadelphia County Court of Common Pleas (the "*Park* Complaint"). On February 27, 2020, Joseph and Mary Muzikar commenced a case captioned as *Muzikar et al. vs. Griffiths et al.*, CASE ID 200203304, in the Philadelphia County Court of Common Pleas (the "*Muzikar* Complaint"). The *Muzikar* action was consolidated for discovery and trial purposes with the *Park* action and this consolidated litigation is referred to herein as the "Underlying Litigation." True and correct copies of the *Park* and *Muzikar* Complaints are attached hereto as Exhibits D and E.

42.    In their complaints, the plaintiffs in the Underlying Litigation (the "Underlying Plaintiffs") demand monetary damages for claims of bodily injury and related damages from IVFH, Food Innovations, Innovative Gourmet, and Mr. Griffiths in addition to AIM Leasing Company, Inc. d/b/a AIM Transportation Solutions and d/b/a AIM National Lease. All of these parties are referred to collectively as "Defendants" in the *Park* and *Muzikar* Complaints.

43.     The Underlying Plaintiffs allege that their vehicles were struck, "by the Defendants' commercial motor vehicle in the form of a box truck which was being operated by Defendant Griffiths, who was negligently entrusted by all other Defendants with the possession, control and use of said commercial motor vehicle . . . and as a result of this catastrophic collision all Plaintiffs sustained serious, painful and permanent personal injuries . . ." Ex. D, at ¶ 45; Ex. E, at ¶ 41.

44.     The Underlying Plaintiffs further allege that the negligence of the "Defendants, singly, jointly, severally and vicariously, their agents, servants, workmen, and/or employees as set forth herein," was "the factual cause of the motor vehicle collision and the injuries and damages sustained by Plaintiffs."  Ex. D, at ¶ 49; Ex. E, at ¶ 58.

45.     The Underlying Plaintiffs also allege that "[a]t all times material to [their cause of action], Defendant Evan J. Griffiths was the agent, servant, workman, and/or employee, acting in the course and scope of his employment with and on behalf of Defendant[s] iGourmet, LLC d/b/a iGourmet.com, Innovative Gourmet, LLC, Food Innovations, Inc., Innovative Food Holdings, Inc., and AIM Leasing Company, Inc. d/b/a AIM Transportation Solutions and d/b/a AIM NationaLease."  Ex. D, at ¶ 17; Ex. E, at ¶ 13.

46.     Other allegations of the negligence of the "Defendants" in the Underlying Litigation include:

      a.   failing to assure that Griffiths was properly qualified to drive;
      b.   failing to assure Griffiths had the ability to drive;
      c.   failing to assure that Griffiths was properly trained;
      d.   failing to properly supervise Griffiths;
      e.   failing to enforce FMCSR regulations concerning the number of hours
         and distances  which  its drivers may be on the  road;
      f.   negligence per se; etc.

Ex. D, at ¶ 50; *see also* Ex. E, at ¶ 59.

47.     By referring to all "Defendants" collectively in the *Park* and *Muzikar* Complaints, including IVFH, Food Innovations, Innovative Gourmet and Mr. Griffiths, the Underlying Plaintiffs allege "bodily injury" caused by an "accident" resulting from the ownership, maintenance or use of a covered commercial motor vehicle or "auto" owned, maintained or used by IVFH, Food Innovations and the driver Mr. Griffiths.

48.     By referring to all "Defendants" collectively, the Underlying Plaintiffs expressly allege that Innovative Gourmet is responsible for the allegedly negligent conduct of IVFH, Food Innovations and the driver Mr. Griffiths, and vice versa.

49.     Additionally, the auto at issue  driven by Mr. Griffiths is a covered "auto" because it is alleged to have been leased, hired, rented or borrowed or otherwise used "in connection with" the business of IVFH and Food Innovations, and therefore Mr. Griffiths is an "insured" as the driver of a covered "auto" used in connection with these businesses that he drove with permission.

50.     Because IVFH is the "named insured," "Food Innovations" is added as an "insured," and Mr. Griffiths is an "insured" under the Hanover Policies as a person who had permission to drive a covered commercial motor vehicle or "auto," and because the complaints in the Underlying Litigation allege that Innovative Gourmet (and each of the Policyholders) is liable for Mr. Griffiths' conduct and the conduct of IVFH and Food Innovations, Innovative Gourmet is also an "insured" in relation to these claims.

### THE ORAL INDEMNIFICATION AGREEMENT AMONG IVFH, FOOD INNOVATIONS AND INNOVATIVE GOURMET

51.     In April 2018, IVFH and its subsidiaries Innovative Gourmet and Food Innovations created a unique "Just-in-Time" delivery program ("JIT Program"), through which (a) Food Innovations engaged in sales and marketing of this program to service premier clients and (b) Innovative Gourmet created a  new  business  venture by, among other things, building out special

warehouse areas; dedicating trucks and other logistics and customer service resources for delivery; procurement, packing and shipping the inventory it maintained; and delivering the goods to implement the program.

52.     IVFH invested considerable sums to build out warehouses and other related infrastructure at Innovative Gourmet, so that Innovative Gourmet could deliver products on IVFH's and Food Innovations' behalf as part of the JIT Program. Before they launched the JIT Program, the principals of IVFH, Innovative Gourmet, and Food Innovations verbally agreed that IVFH would defend and indemnify Innovative Gourmet in connection with any liability claims arising out of the JIT program.

53.     By way of this oral agreement, IVFH agreed to bear responsibility in connection with the entities' JIT Program for tort liability and to defend and indemnify Innovative Gourmet in relation to potential claims like those asserted in the Underlying Litigation.  This agreement has been supported by the parties' partial performance.

### THE HANOVER INSURANCE COMPANIES' BREACH OF THE INSURANCE POLICIES AND BAD FAITH CONDUCT IN CONNECTION WITH THE UNDERLYING LITIGATION

54.     The Policyholders promptly notified the Hanover Insurance Companies of the Underlying Litigation and requested the appointment of counsel to defend them.

55.     By letter dated August 23, 2019, a Hanover Insurance Group representative wrote to the Policyholders, on behalf of both of the Hanover Insurance Companies, expressly denying coverage for Innovative Gourmet, LLC and implicitly denying coverage for Mr. Griffiths under the Hanover Polices for the Underlying Litigation.

56.     In the August 23, 2019 letter, the Hanover Insurance Companies did not address allegations in the Underlying Litigation that Innovative Gourmet LLC and Food Innovations may be held liable for alleged wrongdoing of Mr. Griffiths or the Named Insured, IVFH.  The Hanover

Insurance Companies did not explain why these allegations do not trigger their duty to defend under the plain language of the policies, but simply asserted "Innovative Gourmet is neither a Named nor Additional Insured on this policy as of the date of loss of June 20, 2019.  As such there is no coverage for Innovative Gourmet, LLC on our policy for this claim."

57.     Concerning coverage under the Excess Policy, despite the plain language of the Excess Policy insuring damages covered by the underlying Auto Policy, under which Innovative Gourmet is covered, the Hanover Insurance Companies focused instead on the policy of a different insurance company, stating in their August 23, 2019 letter that "Innovative Gourmet, LLC's policy with Erie Insurance is not shown in the Schedule of Underlying Insurance of the Hanover policy as of the alleged date of loss of June 20, 2019.  As such there is no coverage for Innovative Gourmet, LLC on our policy for this claim."

58.     By letter dated December 23, 2019, the Policyholders wrote to the Hanover Insurance Companies providing a clear explanation of their rights to coverage based on a comparison between the allegations in the Underlying Litigation and the language of the Hanover Policies, and the Policyholders described the terms of their pre-loss oral agreement concerning the JIT Program.

59.     By letter dated January 30, 2020, the Policyholders wrote again to the Hanover Insurance Companies seeking a response, as the Hanover Insurance Companies had not responded to the Policyholders' December 23, 2019 letter demanding that they undertake their obligations to provide a defense and indemnity for Innovative Gourmet.

60.     By email dated February 4, 2020, the Hanover Insurance Companies' representative from the Hanover Insurance Group informed the Policyholders that their coverage position was "unchanged" without providing any further explanation.

61.     By email dated March 13, 2020, the Policyholders wrote to the Hanover Insurance Companies seeking a formal response to the Policyholders' December 23, 2019 letter.

62.     By email dated March 18, 2020, the Hanover Insurance Companies' claims representative from the Hanover Insurance Group stated, "I am working on drafting a more formal reply, but, in sum, our previous position on the matter of tender remains.  We find no basis to trigger a defense owed under the omnibus clause and/or via contractual indemnification.  Thank you."  Despite this promise, the Hanover Insurance Companies provided neither a formal reply nor further explanation to the Policyholders for their denial of benefits to Innovative Gourmet and Mr. Griffiths under the Hanover Policies.

63.     In response to demands to provide a defense to Innovative Gourmet by Hartford, another insurance company of the Policyholders, the Hanover Insurance Companies' representative from the Hanover Insurance Group explained by way of email dated April 1, 2020 that they would defend only IVFH and Food Innovations, stating, "[m]y policy provides coverage for named defendants FOOD INNOVATIONS, INC. and INNOVATIVE FOOD HOLDINGS, INC. No coverage letter was issued to these two named insured's, and we are providing them with a defense."  No further explanation was given to the Policyholders concerning the coverage denial to Innovative Gourmet and Mr. Griffiths.

64.     By failing to provide any defense to Innovative Gourmet and Mr. Griffiths notwithstanding the policy terms, the allegations in the Underlying Litigation, and the pre-loss agreement of IVFH and Food Innovations to defend and indemnify Innovative Gourmet, the Hanover Insurance Companies have failed to defend and protect all of their Policyholders in the Underlying Litigation.

65.     Despite notice by the Policyholders and Hartford regarding the magnitude of the

injuries in the Underlying Litigation and the need to determine available coverage for the Policyholders, the Hanover Insurance Companies through their mutual representative continued to provide excuses for their denial position on April 6, 2020 by stating the Hanover Policies provide "coverage for Food Innovations, INC. and Innovative Food Holdings, INC." and Hanover was "not providing coverage for Innovative Gourmet."  (emphasis in original)

66.     By letter dated October 27, 2020, the Policyholders wrote to the Hanover Insurance Companies through their representative at the Hanover Insurance Group stating, "Hanover has not provided a justification for its ongoing refusal to provide a defense or indemnification for Innovative Gourmet LLC, together with Innovative Food Holdings, Inc., under the oral indemnification agreement."

67.     In their October 27, 2020 letter, the Policyholders provided sworn affidavits from the principals of each of the Policyholders detailing the terms of their oral indemnification agreement under which Innovative Gourmet was supposed to be defended and indemnified against claims like those at issue in the Underlying Litigation.

68.     The Policyholders again explained to the Hanover Insurance Companies that "the parties to the Just-In-Time program expressly agreed Hanover's named insured, Innovative Food Holdings, Inc., would protect, indemnify and hold harmless its subsidiary, Innovative Gourmet LLC, in relation to claims involving the Just-In-Time Program, including the payment of all legal costs and expenses."

69.     The Policyholders stated in the October 27, 2020 letter that "[i]n accordance with this agreement, Innovative Gourmet LLC has passed along all of its expenses and losses to Innovative Food Holdings, Inc., and Innovative Food Holdings, Inc. has accounted for those expenses accordingly."  In keeping with their pattern of ignoring prior coverage correspondence,

the Hanover Insurance Companies have not responded to the Policyholders' letter or this information in any manner to date.

70.     Despite repeated requests from Policyholders for over eighteen months, the Hanover Insurance Companies each continue to deny any coverage for Innovative Gourmet and Mr. Griffiths; they have failed to protect their Policyholders from defense costs and liability risks presented in the Underlying Litigation, including the obligation of IVFH to defend and indemnify Innovative Gourmet; they have unreasonably delayed and denied the Policyholders the benefits of the Hanover Policies; and they have failed to respond to numerous efforts by the Policyholders to resolve these problems, all of which has prompted the Policyholders to file this action.

71.     The Policyholders have complied with all conditions under the Hanover Policies to obtaining the coverage available to the Policyholders for the Underlying Litigation.

## COUNT I
## DECLARATORY JUDGMENT

72.     The Policyholders hereby incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth at length herein.

73.     There exists an actual and justiciable controversy between the parties regarding the interpretation of the Hanover Policies and their application to the Policyholders' claim for coverage related to the Underlying Litigation.

74.     The insurance policies that the Hanover Insurance Companies sold to Policyholders include a duty to defend the Policyholders against any suit seeking damages because of bodily injury and caused by an accident during their policy period.

75.     Under applicable law, the Hanover Insurance Companies are obligated to defend the Policyholders in the Underlying Litigation if the allegations therein may potentially come within the coverage terms of the Hanover Policies, which duty continues unless the Hanover

Insurance Companies can confine all claims to a recovery that is not within their policies' coverage.

76.     Here, the allegations in the Underlying Litigation state that Innovative Gourmet is potentially responsible for bodily injury and property damage caused by negligence of other insureds, including IVFH, Food Innovations and Mr. Griffiths, while driving a covered auto used in connection with their business.  By reason of the foregoing, the Hanover Insurance Companies have a duty to defend all of the Policyholders as their "insureds" in the Underlying Litigation.

77.     Additionally, the Hanover Insurance Companies are obligated to defend and protect IVFH and Food Innovations by defending and indemnifying Innovative Gourmet as their pre-loss contractual indemnitee.

78.     Despite the potential for coverage for the Policyholders under the Hanover Policies and the undisputed terms of the pre-loss defense and indemnity agreement among them, the Hanover Insurance Companies have disputed that all of the Policyholders are entitled to coverage under the Hanover Policies and refused to defend or indemnify Innovative Gourmet and Mr. Griffiths in any fashion.

79.     Given this actual controversy that exists, the Policyholders are entitled to a declaration that the Hanover Insurance Companies have a duty to defend all of the Policyholders in the Underlying Litigation, including Innovative Gourmet and Mr. Griffiths.

**WHEREFORE**, the Policyholders respectfully request that judgment be entered in their favor and against the Hanover Insurance Companies declaring that the Hanover Insurance Companies have a duty to defend all of the Policyholders, as well as an award of, without limitation:

(a)   compensatory damages;

    (b)   consequential damages;

    (c)   prejudgment interest, post-judgment interest, and costs; and

    (d)   any and all additional relief as the Court deems just, equitable and proper.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>

80.     The Policyholders hereby incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth at length herein.

81.     The Policyholders purchased valid and binding policies of insurance, supported by good and valuable consideration, from the Hanover Insurance Companies.

82.     The Policyholders have performed all of their obligations under the Hanover Policies, including paying the premiums, providing adequate and timely notice, and cooperating with the Hanover Insurance Companies.

83.     The Policyholders have demanded coverage for the defense and losses incurred in connection with the alleged damages suffered by the Underlying Plaintiffs.

84.     The Underlying Litigation constitutes a "suit" in which the Underlying Plaintiffs are seeking damages for "bodily injury" caused by an "accident" during the policy period of the Hanover Policies.

85.     The Hanover Insurance Companies are obligated to defend all of the Policyholders, including Innovative Gourmet and Mr. Griffiths, in the Underlying Litigation, but refused to do so without justification.

86.     Under the terms of the Hanover Policies, there are no exclusions or limitations that would preclude coverage of the Policyholders in the Underlying Litigation.

87.     The Hanover Insurance Companies have breached their policies of insurance by failing and refusing to provide a defense in the Underlying Litigation to Innovative Gourmet and

Mr. Griffiths, to the detriment of all of the Policyholders, and failing to pay for the defense of all of the Policyholders, including Innovative Gourmet, IVFH, Food Innovations and Mr. Griffiths.

88.     The Hanover Insurance Companies' conduct, in refusing to fully defend all of the Policyholders in the Underlying Litigation, constitutes a breach of their insurance contracts for which no justification exists.

89.     As a direct and proximate result of the Hanover Insurance Companies' breach of their contracts of insurance with the Policyholders, the Policyholders have sustained damage including, but not limited to, attorney's fees in the Underlying Litigation reasonably incurred in the defense of Innovative Gourmet, all of which are compensable.

**WHEREFORE**, the Policyholders seek judgment in their favor as to Count II and the entry of an award requiring the Hanover Insurance Companies to pay the Policyholders all monetary damages suffered by the Policyholders caused by the Hanover Insurance Companies' breach of contract including, without limitation:

(a)   compensatory damages;

(b)   consequential damages;

(c)   prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

(d)   any and all additional relief as the Court deems just and appropriate.

## <u>COUNT III</u>
## <u>BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AND BAD FAITH</u>

90.     The Policyholders incorporate by reference the allegations contained in the above-stated paragraphs.

91.     The Hanover Policies all contain an implied covenant of good faith and fair dealing that imposes on the Hanover Insurance Companies an obligation to not do anything to injure the rights of Policyholders to receive the benefits of the Hanover Policies and to not place their own

interests above those of their policyholders.

92.     Additionally, Pennsylvania has codified this obligation by statute in 42 Pa.C.S. §
8371, which provides bad faith remedies for "an action arising under an insurance policy."

93.     The Hanover Insurance Companies have an obligation to act in good faith towards
the Policyholders in every decision they make regarding the Underlying Litigation concerning the
Hanover Policies.

94.     The Hanover Insurance Companies acted in bad faith towards Policyholders with
respect to the Underlying Litigation by, among other things: a) denying coverage without a
reasonable basis; b) acting in a one-sided manner and exposing the Policyholders to severe losses
for which Policyholders purchased appropriate insurance coverage by way of the Hanover
Policies; c) continually refusing to pay for Policyholders' claim for over eighteen months without
legal compulsion; d) failing to respond in a timely manner or at all to demands for a defense and
other correspondence from the Policyholders; e) refusing to give any consideration to evidence of
the Policyholders' defense and indemnification agreement and failing to respond to it at all; and
(f) forcing the Policyholders to protect themselves by way of this lawsuit against Hanover.

95.     The Hanover Insurance Companies have repeatedly placed their own interests
ahead of those of their Policyholders to the detriment of the Policyholders, and continue to refuse
to correct their bad faith decisions.

96.     The Hanover Insurance Companies have adopted unreasonable coverage-limiting
interpretations of the terms and conditions in the Policies to the detriment of the Policyholders and
in bad faith.

97.     The self-interested conduct of the Hanover Insurance Companies in refusing to pay
for any of the costs of defense counsel and denying any coverage responsibilities relating to

Innovative Gourmet and Mr. Griffiths unnecessarily exposes the Policyholders to the risk of an adverse verdict in excess of the limits of liability of their insurance policies.

98.     As a result of the Hanover Insurance Companies' refusal to honor their obligation to act in good faith with respect to the Policyholders' requests for coverage in the Underlying Litigation, the Policyholders have incurred costs and expenses, including investigation costs and attorneys' fees and costs in connection with their pursuit of insurance coverage for the Underlying Litigation.

99.     All of the acts of the Hanover Insurance Companies recounted above by which they deprived the Policyholders of the benefits of the Hanover Policies were undertaken knowing there was no reasonable basis for them or with reckless disregard to whether there was a reasonable basis for those acts.

100.    The Policyholders have been damaged as a result of the unreasonable denial of benefits of the Hanover Policies.

101.    The Hanover Insurance Companies have acted in bad faith towards the Policyholders within the meaning of 42 Pa. C.S.A. § 8371.

**WHEREFORE**, the Policyholders seek judgment in their favor as to Count III and the entry of an award requiring the Hanover Insurance Companies to pay the Policyholders all monetary damages suffered by the Policyholders caused by their unfair and unreasonable breaches of the duty of good faith and fair dealing including, without limitation:

(a)   compensatory damages;

(b)   consequential damages;

(c)   punitive damages;

(d)   prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

(e)   any and all additional relief as the Court deems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of any issue triable of right by a jury in this case.

REED SMITH LLP

Dated:  March 5, 2021             By:     /s/ John N. Ellison
                                  John N. Ellison (PA 51098)
                                  Luke E. Debevec (PA 92860)
                                  Three Logan Square
                                  1717 Arch Street, Suite 3100
                                  Philadelphia, PA 19103
                                  T:  (215) 851-8100
                                  F:  (215) 851-1420
                                  jellison@reedsmith.com
                                  ldebevec@reedsmith.com

                                  *Counsel for Plaintiffs*